**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| GRAFTON & UPTON RAILROAD COMPANY,<br><br>*Petitioner*,<br><br>v.<br><br>SURFACE TRANSPORTATION BOARD and THE UNITED STATES OF AMERICA,<br><br>*Respondents*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-1058 |

**PETITION FOR REVIEW**

Pursuant to 28 U.S.C. §§ 2321, 2342-2344, and Rule 15 of the Federal Rules of Appellate Procedure, Grafton & Upton Railroad Company ("Petitioner") hereby petitions this Court for review of the decision of the Surface Transportation Board ("STB") entered on December 18, 2024, in *Grafton and Upton Railroad Company – Petition for Declaratory Order*, Finance Docket No. 36464 (STB served Dec. 18, 2024) ("Final Decision"). The Final Decision, a copy of which is attached as Exhibit A, held that 49 U.S.C. § 10501(b) does not preempt a Massachusetts state law invoked by the Town of Hopedale, Massachusetts, to take real property in the Town that Petitioner acquired and controls. Petitioner challenges the entirety of the Final Decision. Respondents are the Surface Transportation Board and the United States.

Venue is proper in this Court under 28 U.S.C. § 2343. The petition is timely because Petitioner is seeking review within 60 days after entry of the order under review. *See* 28 U.S.C. § 2344.

Petitioner seeks relief on the grounds that the agency action is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and that it is not supported by

substantial evidence or a rational basis in the facts in the record. Petitioner requests that this Court vacate the order under review and grant such additional relief as may be necessary and appropriate.

Dated: February 11, 2025

Respectfully submitted,

/s/ *David L. Meyer*
David L. Meyer
LAW OFFICE OF DAVID L. MEYER
1105 S. Street, N.W.
Washington, D.C. 20009
Telephone: (202) 294-1399
Email: David@MeyerLawDC.com

*Attorney for Petitioner Grafton & Upton Railroad Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2025, I caused a true and correct copy of the foregoing Petition for Review to be sent by FedEx to the Respondents:

Surface Transportation Board
395 E Street, SW
Washington, DC 20423

United States of America
Pamela Bondi
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530

And to all parties that were admitted to participate in the agency proceeding under review:

Charles A. Spitulnik
Kaplan Kirsch & Rockwell LLP
1634 I (Eye) Street, NW, Suite 300
Washington, DC 20006
United States
*Attorney for Town of Hopedale, MA*

/s/ *David L. Meyer*
Counsel

**EXHIBIT A**

Surface Transportation Board Decision on Review

(*Grafton and Upton Railroad Company – Petition for Declaratory Order*, F.D. 36464 (STB Served Dec. 18, 2024))

52210
EB

SERVICE DATE – DECEMBER 18, 2024

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. FD 36464

GRAFTON AND UPTON RAILROAD COMPANY—
PETITION FOR DECLARATORY ORDER

Digest:[1] The Board reopens this proceeding and denies a petition filed by Grafton and Upton Railroad Company (GURR) seeking a determination that federal law preempts efforts by the Town of Hopedale, Mass. (the Town), to pursue remedies under state and local law related to GURR's acquisition of control and use of certain real property in the Town. Instead, the Board concludes that the Town's efforts are *not* preempted and therefore denies the petition for a declaratory order.

Decided: December 18, 2024

On November 23, 2020, Grafton and Upton Railroad Company (GURR), a Class III rail carrier, filed a petition for declaratory order requesting that the Board find that the attempts by the Town of Hopedale, Mass. (Town or Hopedale), to prevent GURR from using real property located in the Town for rail transportation are preempted under 49 U.S.C. § 10501(b). Shortly after GURR filed its petition, the parties entered into a settlement agreement, and the proceeding was dismissed in a decision served February 18, 2021. On April 10, 2024, GURR filed a motion seeking to reopen the proceeding and requesting that the Board find that the Town's efforts to acquire the real property at issue are preempted. The Town filed a reply on April 30, 2024, to which GURR replied on May 13, 2024.

For the reasons explained below, the Board will reopen this proceeding and deny GURR's petition for declaratory order.

BACKGROUND

GURR owns and operates a 16.5-mile rail line that runs in a north-south direction between a connection with CSX Transportation, Inc., in North Grafton, Mass., and Milford, Mass. (GURR Pet. 1.) In June 2018, GURR initiated discussions with the owner of a 155-acre parcel of real estate, located at 364 West Street in Hopedale, that is bisected by GURR's existing right-of-way. (Id. at 2-3.) GURR states that it was interested in acquiring the property to expand its existing rail yard in Hopedale. (Id.) According to GURR, approximately 130 acres of the

---

[1] The digest constitutes no part of the decision of the Board but has been prepared for the convenience of the reader. It may not be cited to or relied upon as precedent. See Pol'y Statement on Plain Language Digs. in Decisions, EP 696 (STB served Sept. 2, 2010).

property (Subject Property) are classified as forest land under Chapter 61 of Massachusetts state law. (Id. at 4.) Furthermore, according to GURR, under Chapter 61, land that is classified as forest land is subject to lower tax rates, and if such land is converted, or sold with the intent to convert, from forestry use to a different use, the local taxing authority acquires a right of first refusal to purchase the land. (Id.)

In June 2020, the beneficiaries of the realty trust that owned the 155-acre parcel at issue, the One Hundred Forty Realty Trust (140 Trust or Trust),[2] entered into an agreement with a realty trust indirectly controlled by GURR for the sale of the 155-acre parcel, including the Subject Property, to GURR. (GURR Pet. 4.) According to the Town, the 140 Trust provided the Town a notice of intent to sell the Subject Property, which the Town claims did not comply with the requirements of Chapter 61. (Town Reply 5.) The 140 Trust subsequently withdrew its notice of intent. (Id. at 6.) The Town claims the notice, despite being defective, triggered the Town's right of first refusal. (Id. at 5.) On August 19, 2020, the Town sent a letter to the Trust, with a copy to the GURR-affiliated trust, stating that the notice was deficient but that, among other things, the Town was reserving all rights and remedies regarding its right of first refusal. (Id. at 6; Ex. 1, Second Amend. Verified Compl. at Ex. D.)

According to GURR, on October 12, 2020, the beneficiaries of the 140 Trust sold their beneficial interest to GURR, and the owner of GURR and the president of GURR became the new trustees of the trust that owns the Subject Property. (GURR Pet. 5; see also Town Reply 7.) On the same date, 140 Trust also allegedly conveyed to GURR by quitclaim deed the 25-acre portion of the property that was not subject to Chapter 61. (GURR Pet. 5.) According to the Town, GURR sent a letter to the Town noting its purchase of the beneficial interest but did not send a new notice pursuant to Chapter 61. (Town Reply 7-8.) As a result of these transactions, GURR purported to become the owner of the beneficial interest in the 140 Trust, thereby supposedly gaining control of the Subject Property. (GURR Pet. 5; Town Reply 8.) The Town claims that transfer of the beneficial interest in the 140 Trust triggered a new right of first refusal to acquire the Subject Property. (Town Reply 7, 8.)

At a special Town meeting on October 24, 2020, the Town voted to appropriate funds to acquire (either by purchase or eminent domain) the Subject Property. (Id. at 8; Ex. 2 (attaching Reilly v. Town of Hopedale, 102 Mass. App. Ct. 367, 372 (2023)).) On October 30, 2020, the Town's Select Board voted to exercise a right of first refusal to purchase the Subject Property. (Town Reply 8; GURR Pet. 5.) The Town subsequently recorded notice of its decision in the Worcester South District Registry of Deeds and sent its notice, along with a proposed purchase and sale agreement for the Subject Property, to 140 Trust's prior and current trustees. (Town Reply 8; GURR Pet. 5.) Meanwhile, GURR began large-scale tree clearing on the Subject Property,[3] Reilly, 102 Mass. App. Ct. at 372, and the Town filed suit in the Massachusetts Land

---

[2] Although GURR never specifically identifies the name of the realty trust from which GURR purportedly acquired the property, Hopedale and court records identify it as the One Hundred Forty Realty Trust. (Town Reply 2.)

[3] The Town contends that the tree removal "gave rise to a third, separate and independent right of first refusal . . . ." (Town Reply 9.)

Court (Land Court) "to vindicate its Chapter 61 right of first refusal," (Town Reply 8-9; see also GURR Mot. 5).

In response to the Town's state court lawsuit, GURR brought this declaratory order proceeding, seeking a Board determination that 49 U.S.C. § 10501 preempts the Town's exercise of its rights under Chapter 61. GURR argued that the Town's actions were preempted both (1) categorically, on the ground that they were an attempt to impose preclearance or permitting requirements that would deny or unreasonably delay GURR's ability to conduct rail transportation operations, and (2) as applied, because reliance on Chapter 61 to compel a conveyance of real estate owned by GURR is tantamount to an attempted eminent domain taking that would unreasonably burden and interfere with rail transportation and interstate commerce. (GURR Pet. 7.)

In February 2021, GURR and the Town, through its Select Board, entered into a settlement agreement resolving the issues presented to the Land Court and in GURR's petition for declaratory order with the Board. (GURR Mot. 6; Town Reply 9.) Among other things, the settlement agreement provided that the Town would purchase about forty acres—or one-third—of the Subject Property. Reilly, 102 Mass. App. Ct. at 373. Pursuant to that settlement agreement, the Town and GURR filed a stipulation of dismissal with the Land Court, (see GURR Mot. 6), and GURR requested dismissal of the Board proceeding, which the Board granted. See Grafton & Upton R.R.—Pet. for Declaratory Ord., FD 36464 (STB served Feb. 16, 2021).

On March 3, 2021, a group of Town residents challenged the settlement agreement in Massachusetts Superior Court. That court subsequently held that the settlement agreement was ineffective because the Town did not have authority to acquire a subset of the Subject Property. (GURR Mot. 10 (quoting Reilly, 102 Mass. App. Ct. at 374).)[4] The result, according to the court, was that "the [r]ailroad would retain the land and the Town would retain its money and the right to continue attempting to enforce the [o]ption." (Id.) No party "appealed from [that] aspect" of the Superior Court's decision, which the Court of Appeals of Massachusetts characterized as "binding on the [T]own, the railroad, and the trust . . . ." Reilly, 102 Mass. Appl. Ct. at 374, 385. The Land Court thereafter vacated the February 2021 stipulation of dismissal, (see GURR Mot., V.S. Mordecai, Attach. D, Order of the Mass. Land Ct. (Mar. 27,

---

[4] While litigation regarding the settlement agreement and ownership of the Subject Property was ongoing in state court, in 2022, the Town voted to exercise its power of eminent domain to acquire most of the Subject Property. (Town Reply 12.) GURR then filed suit in the U.S. District Court of Massachusetts, seeking to block condemnation and obtain a declaration that the Town's actions were preempted under federal law. (Id.; GURR Mot. 7.) The District Court entered a preliminary injunction and ordered GURR to file a petition for declaratory order with the Board regarding the Town's eminent domain action. Grafton & Upton R.R. v. Town of Hopedale, No. 22-cv-40080, 2023 WL 2761205, at *14 (D. Mass. Mar. 31, 2023). As directed by the court, GURR filed a petition with the Board. By decision served November 15, 2023, the Board granted GURR's petition, finding that the Town's attempt to use eminent domain to acquire most of the Subject Property, as well as a preclearance order by the Hopedale Conservation Commission, were preempted. Grafton & Upton R.R.—Pet. for Declaratory Ord. (GURR Order 2023), FD 36696 (STB served Nov. 15, 2023).

2024); see also Town Reply 14), and the Town filed in the Land Court a Second Amended Complaint in pursuit of its claims to enforce its Chapter 61 right of first refusal and related claims, (see Town Reply, Ex. 1).[5]

On April 10, 2024, GURR filed a motion to reopen this declaratory order proceeding, asserting that the Land Court's decision to vacate the February 2021 stipulated dismissal in that case, which was a predicate to the filing of GURR's motion to dismiss this Board proceeding, is a substantially changed circumstance that warrants reopening. (GURR Mot. 11.) By reply filed April 30, 2024, the Town states that it does not oppose the request to reopen this proceeding but disputes GURR's assertion that Chapter 61 is preempted. (Town Reply 15.) Accordingly, the Town argues that the Board should deny GURR's petition for declaratory order. (Id. at 31.) On May 13, 2024, GURR replied to the Town's reply.[6]

For the reasons discussed below, the Board will reopen this proceeding and deny GURR's petition for declaratory order.

## DISCUSSION AND CONCLUSIONS

*Motion to Reopen.* Under 49 U.S.C. § 1322(c) and 49 C.F.R. § 1115.4, the Board may reopen a proceeding because of "material error, new evidence, or substantially changed circumstances." The alleged grounds must be sufficient to convince the Board that its prior decision in the case would be materially affected in order for reopening to be granted. See Montezuma Grain v. STB, 339 F.3d 535, 541-42 (7th Cir. 2003); Canadian Nat'l Ry.—Control—EJ&E W. Co., FD 35087 (Sub-No. 8), slip op. at 4 (STB served Dec. 21, 2018).

The Board granted dismissal of this proceeding in light of the parties' settlement agreement, stipulation of dismissal with the Land Court, and GURR's assertion that the issues raised in its petition had been resolved. The settlement agreement has since been declared invalid, the Land Court has vacated the February 2021 stipulation of dismissal, and the question of preemption remains unresolved. The Board finds that these developments constitute changed circumstances. The Board will therefore grant the unopposed motion to reopen.

*Petition for Declaratory Order*. Under 5 U.S.C. § 554(e) and 49 U.S.C. § 1321, the Board may issue a declaratory order to terminate a controversy or remove uncertainty, and the

---

[5] GURR represented that the "Town's motion to vacate the stipulated judgment will be subject to a motion for reconsideration and appellate practice by GURR." (GURR Mot. 2 n.1.) Since GURR's filing, that reconsideration motion was denied by decision of the Land Court dated July 1, 2024. See Town of Hopedale v. Priscoli, No. 20 MISC 000467 (DRR) (Mass. Land Ct. July 1, 2024).

[6] In its filing, GURR requests leave to file a "reply to a reply." While the Board's regulations do not permit replies to replies, 49 C.F.R. § 1104.13(c), in the interest of a more complete record and because GURR's May 13, 2024 submission (GURR Rebuttal) clarifies its basis for seeking reopening, the Board will accept that filing into the record. See City of Alexandria—Pet. for Declaratory Ord., FD 35157, slip op. at 2 (STB served Nov. 6, 2008) (allowing a reply to a reply "[i]n the interest of compiling a full record").

Board finds it appropriate to issue a declaratory order here to resolve the current controversy between GURR and the Town. For the reasons explained below, the Board will deny GURR's request for an order finding that the Town's efforts to enforce its asserted right of first refusal are preempted; the Board concludes instead that those efforts are *not* preempted.

Before proceeding to the merits, the Board considers whether GURR has abandoned the categorical preemption argument raised in its petition for declaratory order given what it now argues in its reopening filings. In the declaratory order petition, GURR argued that the right-of-first-refusal provision of Chapter 61 is categorically preempted. In its motion to reopen, however, GURR no longer expressly makes this argument. Rather, GURR argues that the question of whether the Town's latest attempt to exercise its right of first refusal to acquire the Subject Property is preempted is "straightforward—particularly given the preclusive effect" of the GURR Order 2023 and the observation by the Massachusetts Superior Court that—following the invalidation of the settlement agreement—GURR "would retain the land" and the Town would retain the right to continue to enforce its right of first refusal. (GURR Mot. 12.)

The Town responds that the issue in this case is whether ICCTA "facially preempts" a state law of general application that provides an affected locality a "right of first refusal to acquire statutorily designated forest land" before that forest land is sold to an entity, or converted, for a commercial, industrial, or residential use purpose, "simply because the would-be buyer happens to be a railroad." (Town Reply 16.)

In its rebuttal, GURR denies the Town's characterization of the case as presenting a facial preemption challenge and expressly embraces an as-applied analysis based on the entry and subsequent invalidation of the settlement agreement:

> Given the facts as they currently exist, Hopedale's characterization of the case as one that presents a facial challenge is incorrect. This matter is much simpler under the current facts as they have evolved. The as-applied test is now the proper analysis for evaluating whether Chapter 61 is preempted under the facts as they evolved since the proceeding was originally dismissed. GURR seeks a ruling that, under the present facts, Chapter 61 is preempted. Motion to Reopen at 3. [The Town's] latest attempt to use Chapter 61 – after its failed attempt to use eminent domain – is simply a pretext to seize GURR's property years after it entered into a settlement agreement with GURR and began developing the rail transload facility.

(GURR Rebuttal 2-3.)[7]

---

[7] GURR separately asserts that the Town's arguments against a finding of preemption are "inappropriate to respond to the motion to reopen." (GURR Rebuttal 1.) GURR gives no reason why that is the case. For example, in none of its filings in this proceeding does GURR ask the Board to establish a procedural schedule for further merits briefing. Moreover, the Town's arguments against preemption seem entirely appropriate given that reopening requires a showing that the alleged new circumstances warrant a different outcome. Montezuma Grain Co. v. STB, 339 F.3d 535, 541-42 (7th Cir. 2003). Indeed, GURR itself argued that the Town's efforts to exercise its Chapter 61 rights are preempted. (GURR Mot. 12-13.)

The Board interprets the above-quoted language as a waiver of GURR's argument that Chapter 61 is facially or categorically preempted. See PYCO Indus., Inc.—Feeder Line Application—Lines of S. Plains Switching, Ltd., FD 34890, slip op. at 7 (STB served June 11, 2010) (holding that a railroad had waived a challenge to the Board's finding that the public convenience and necessity (PC&N) permitted the sale of rail line based on the railroad's statement that it "does not oppose a finding that PC&N permits the sale of" the line at issue). But even if this interpretation is wrong, as explained below, the Board finds that GURR's categorical preemption argument lacks merit.

**A. Chapter 61's right of first refusal provisions are not categorically preempted**

Even if the Board were to assume that GURR has preserved its categorical preemption argument, the argument is unpersuasive. In its petition for declaratory order, GURR argued that "the Town's efforts to prevent [GURR] from using the [Subject Property] for rail transportation purposes amount to an attempt to impose preclearance or permitting requirements that would deny or unreasonably delay [GURR's] ability to conduct rail transportation operations and, consequently, are categorically preempted." (GURR Pet. 6-7.) According to GURR, it intends to use the land for the construction of sidetracks, additional yard tracks, and other facilities in order to meet the increased traffic demands that GURR has experienced over the last several years and the growth that is expected in the future. (Id. at 6.)

The Board's jurisdiction over "transportation by rail carriers" is "exclusive," and "the remedies provided under [49 U.S.C. §§ 10101-11908] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). As the courts have observed, "[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." City of Auburn v. United States, 154 F.3d 1025, 1030 (9th Cir. 1998) (quoting CSX Transp. Inc. v. Ga. Pub. Serv. Comm'n, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996)). Preemption under 49 U.S.C. § 10501(b) applies to "transportation by rail carrier" and "transportation" covers "a . . . facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail," as well as "services related to that movement." 49 U.S.C. § 10102(9).

Under 49 U.S.C. § 10501(b), two broad categories of state or local actions are categorically preempted with respect to transportation by rail carriers: (1) permitting or preclearance requirements that, by their nature, could be used to deny a railroad the right to conduct some part of rail operations or proceed with activities the Board has authorized, and (2) attempts to intrude into matters that are directly regulated by the Board such as railroad rates, services, or rail line construction or abandonment. CSX Transp., Inc.—Pet. For Declaratory Ord., FD 35832, slip op. at 4 (STB served July 31, 2015). However, state or local authorities may otherwise take action when it only incidentally affects rail transportation. See, e.g., N.Y. Susquehanna & W. Ry. v. Jackson, 500 F.3d 238, 252-54 (3d Cir. 2007) (§ 10501(b) preempts "all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation") (internal quotation omitted).

Chapter 61's right of first refusal provisions are not categorically preempted. They do not intrude on matters that are directly regulated by the Board such as railroad rates, services, or rail line construction or abandonment. Nor are they permitting or preclearance requirements, as the Town is not requiring any kind of notification or permitting as a prerequisite to conducting rail operations. Chapter 61 is instead a law of general applicability that gives state municipalities the option to purchase land classified as forest land if the owner wishes to sell the land for, or convert it to, another use. Generally applicable state laws governing the acquisition of property are not considered "preclearance" or "permitting" requirements subject to categorical preemption. See, e.g., City of Milwaukie—Pet. for Declaratory Ord., FD 35625, slip op. at 4-5 (STB served Mar. 25, 2013) (declining to rule on a preemption issue until resolution of a state property dispute by a state court, where a railroad claimed to have appropriated public land for equipment storage); Eastside Cmty. Rail, LLC—Acquis. & Operation Exemption—GNP RLY Inc., FD 35692 et al., slip op. at 3 (STB served Mar. 8, 2022) ("ECR has argued in the state appellate court that federal preemption under 49 U.S.C. § 10501(b) bars the state courts from ruling on state property law issues concerning property subject to this agency's licensing proceedings. That argument is clearly incorrect."); Allegheny Valley R.R.—Pet. for Declaratory Ord.—William Fiore, FD 35388 (STB served Apr. 25, 2011) (denying a request for a Board determination that the property claims and remedies sought in a state court lawsuit were preempted by § 10501(b)).

Thus, the Town's efforts to enforce its statutory option to buy the Subject Property are not categorically preempted.

**B. Chapter 61's right of first refusal provisions are not preempted as applied under the "present facts"**

State actions that are not categorically preempted may nevertheless be preempted as applied if they would have the effect of unreasonably burdening or interfering with rail transportation, which involves a fact-specific determination based on the circumstances of each case. See Franks Inv. Co. v. Union Pac. R.R., 593 F.3d 404, 414 (5th Cir. 2010) (en banc); Norfolk S. Ry.—Pet. for Declaratory Ord., FD 35701, slip op. at 3 (STB served Nov. 4, 2013).

GURR argues that "under the present facts" application of Chapter 61 is preempted as applied. (GURR Rebuttal 3.) As to those facts, GURR contends that it relied on the Town to abide by the settlement agreement and relied on the Town's prior dismissal of its attempts to acquire the Subject Property in the Land Court and its prior dismissal of this proceeding; that GURR "began to develop a rail transload facility and invested in engineering and development"; that, despite the settlement agreement, the Town tried to take the Subject Property by eminent domain; and, that effort having failed, the Town is now attempting in bad faith to "renege" on the settlement agreement that led to this proceeding's prior dismissal. (Id. at 2-3.)

First, the Board disagrees with GURR's characterization of the Town as having reneged on the settlement agreement. After certain residents of the Town sued to invalidate the settlement, the state court determined that the Town's Select Board exceeded its authority by entering into that agreement, that the settlement agreement is ineffective, and that the Town

therefore may now attempt to enforce its claimed Chapter 61 rights. (See Town Reply, Ex. 3, Reilly, 102 Mass. App. Ct. at 374.) That aspect of the state court decision was not appealed and GURR made no argument to the Board that it should be disregarded. An underlying property dispute remains, and the Town's present efforts to enforce its Chapter 61 rights appear consistent with the state court determinations. GURR's suggestion that the Town reneged on the settlement agreement in bad faith after failing in its efforts to acquire the Subject Property by eminent domain does not comport with the record.

The Board is also unpersuaded by GURR's suggestion that it relied on the settlement agreement by developing a rail transload facility and investing in engineering and development. (GURR Rebuttal 3.) The reasonableness of any such reliance is questionable given that the settlement agreement was challenged almost immediately after its execution. As noted above, no party appealed the state court's decision invalidating the settlement agreement and GURR has not otherwise presented any argument to the Board that it was wrongly decided. It is not as if, for example, the challenge to the settlement agreement succeeded based on some novel legal theory or on some reversal of state court precedent that GURR could not reasonably have anticipated. Moreover, the record is unclear on the extent to which GURR actually relied on the settlement agreement. GURR fails to specify the timing of the engineering and development costs it purportedly incurred in reliance on the settlement agreement. (See GURR Mot. 9.) One fact that appears to be uncontroverted is that substantial tree removal took place *before* there even was a settlement. See Reilly, 102 Mass. App. Ct. at 372.

GURR also cited the "preclusive effect of the Board's prior decision"—GURR Order 2023—to support its argument that the Town's attempt to use Chapter 61 is preempted. (GURR Mot. 12.) There is no preclusion here. In GURR Order 2023, the Board considered only whether preemption applied to the Town's use of eminent domain or an enforcement order to prevent GURR's development of the property.[8] Contrary to GURR's assertion, an exercise of Chapter 61 rights is not "tantamount to an eminent domain taking." (GURR Pet. 7.) As explained above, Chapter 61 is a law of general applicability that defines property interests in designated forest land, and the Board did not address whether the Town could enforce its rights under Chapter 61 in state court. Indeed, while the Board presumed that GURR held title to the property at the time, it noted that "if the courts ultimately determine that the railroad does not have a state law property interest in the land, preemption may not shield the railroad from available state law remedies." GURR Order 2023, FD 36696, slip op. at 6 & n.14. Since the Board issued its decision in that proceeding, the Land Court has, in fact, found that the Town may pursue its right of first refusal to acquire the property. (See GURR Mot., V.S. Mordecai at Attach. D, Order of the Mass. Land Ct. (Mar. 27, 2024).)

GURR similarly contends that there is a "preclusive effect" from the Massachusetts Superior Court's finding that GURR "would retain the land" and that the Town would retain "the right to continue attempting to enforce the [o]ption." (GURR Mot. 12; see also GURR Rebuttal 2 (arguing that "even the most recent court decisions expressly note that the property

---

[8] The Town states that it no longer seeks to take the Subject Property, or any of the nearby land occupied by GURR, by eminent domain, and has withdrawn its appeal of the federal District Court decision. (Town Reply 14); see supra note 4.

belongs to GURR").) It is unclear what "preclusive effect" that may be, as this finding by the Court *confirms* that under Massachusetts state law the Town may pursue acquisition under Chapter 61. Indeed, the Massachusetts Land Court recently quoted this language when vacating the February 2021 stipulation of dismissal in that court and allowing the Town to advance its claim to enforce its right of first refusal. (See GURR Mot., V.S. Mordecai, Attach. D, Order of the Mass. Land Ct. (Mar. 27, 2024).) In other words, while GURR may "retain" the Subject Property at the moment, ownership and control of the property under state law are the very issues to be determined under state law in the pending state court litigation. See City of Milwaukie, FD 35625, slip op. at 4 (stating that a city could eject a railroad for its use of the land in violation of local regulations if the court determines that the railroad does not have a state law property interest in the land).

*Conclusion*. The Board emphasizes the unique factual circumstances in which it makes its findings. GURR filed its petition for declaratory order in response to the Town's efforts to exercise its purported rights under Chapter 61 to purchase the Subject Property. The parties subsequently reached a settlement agreement, appearing to have resolved the issues raised both in state court and before the Board, which granted GURR's request to dismiss this proceeding. The state court has since deemed the settlement agreement to be invalid, and ownership and control of the Subject Property remain the subject of active state court litigation. Although GURR contends that the Town's renewed efforts to acquire the Subject Property under Chapter 61 are preempted, the particular facts of this case—among other things, that it was certain citizens and not the Town that sought the settlement agreement's invalidation, the speed with which that challenge was brought, the lack of challenge to the state court's decision, the uncontroverted fact that GURR undertook significant development activities *before* the settlement agreement, and the lack of specificity regarding the engineering and development costs that may have occurred *after* the settlement agreement—all undermine GURR's arguments. Under these circumstances, allowing the Town to pursue its rights would not unreasonably burden or interfere with rail transportation. The Board grants GURR's request to reopen this proceeding and finds that the Town's attempts to enforce its state property rights pursuant to Chapter 61 are not preempted. GURR's petition for a declaratory order seeking a determination to the contrary will be denied.

It is ordered:

1. GURR's motion to reopen this proceeding is granted.

2. GURR's request for leave to file a reply to the Town's April 30, 2024 reply is granted and the Town's reply is accepted into the record.

3. GURR's petition for a declaratory order is denied.

4. This decision is effective on its date of service.

By the Board, Board Members Fuchs, Hedlund, Primus, and Schultz.